NYC COMMISSION ON HUMAN RIGHTS LAW ENFORCEMENT BUREAU

2005 MAY 12 A 11: 04

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------X

JUDGE HOLWELL

ELISSA D. STRAUSS,

Plaintiff,

- against -

THE HARRY FOX AGENCY, INC.,

Defendant.

---------------------------------X

05 Civ. CV 4644

COMPLAINT

PLAINTIFF DEMANDS A TRIAL BY JURY

RECEIVED
MAY 12 2005
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff Elissa D. Strauss ("plaintiff" or "Strauss"), by her attorneys Vladeck, Waldman, Elias & Engelhard, P.C., complaining of defendant The Harry Fox Agency, Inc. ("defendant" or "HFA"), alleges as follows:

NATURE OF THIS ACTION

CITY OF N.Y. LAW DEPT. OFFICE OF CORP. COUNSEL COMMUNICATIONS SECTION
05 MAY 12 AM 11: 45

1. Plaintiff brings this action to remedy discrimination on the basis of gender and pregnancy in the terms, conditions and privileges of employment and to remedy retaliation for plaintiff's opposition to unlawful employment actions, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), including the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e(k); the New York State Human Rights Law, New York State Executive Law §§ 290 to 301 (the "Executive Law") and the Administrative Code of the City of New York §§ 8-101 to 8-131 ("City Law").

2. Plaintiff also brings this action to remedy discrimination on the basis of sex for defendant's failure to pay male and female employees equal wages in violation of the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA"), and the New York State Labor Law § 194 (the "Labor Law").

3. Plaintiff seeks injunctive and declaratory relief, liquidated, compensatory and punitive damages, and other appropriate legal and equitable relief pursuant to Title VII, the EPA, the Labor Law, the Executive Law § 297(9), and the City Law §§ 8-502(a) and (f).

JURISDICTION AND VENUE

4. Jurisdiction of this Court is proper under 28 U.S.C. § 1331 and § 1343(a)(3), Title VII, 42 U.S.C. § 2000e-5(f)(3), and the EPA, 29 U.S.C. § 216(b). This Court has supplemental jurisdiction over plaintiff's Executive Law and City Law claims pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this District pursuant to Title VII, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1391 because the unlawful practices complained of herein occurred within the Southern District of New York.

6. On or about September 1, 2004, plaintiff filed a charge of discrimination with the United States Equal Opportunity Employment Commission (the "EEOC"), complaining of the acts of discrimination and retaliation alleged herein. Plaintiff's Notice of Right to Sue was dated March 3, 2005, and received on March 5, 2005, less than 90 days from the filing of this complaint.

7. Pursuant to § 8-502(c) of the City Law, prior to filing this Complaint, plaintiff served a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court.

PARTIES

8. Plaintiff is a thirty-one year-old woman. Plaintiff worked for HFA part-time while attending law school. In 1998, HFA hired plaintiff as Associate Counsel. Plaintiff is no longer employed with defendant.

9. HFA provides mechanical licenses, which copyright law requires as a prerequisite for the manufacture and distribution of songs outside the public domain by anyone other than the song's author, and collects and distributes royalties. Defendant is an employer within the meaning of Title VII, the Executive Law, the EPA, the City Law and the Labor Law.

FACTS

10. Plaintiff graduated from Brooklyn Law School in 1998. Plaintiff is Chair of the New York State Bar Association's Entertainment, Arts, and Sports Law ("EASL") Section, and has been the Editor-In-Chief of the EASL Journal since 2000. She is also a member of the Board of Editors for the Journal of the Copyright Society of the United States. Plaintiff lectures frequently on copyright issues in the music industry, and she was awarded the New York State Bar Association's Outstanding Young Lawyer of the Year Award in January 2005.

11. When plaintiff began her career at HFA, she was Associate Counsel in a two-attorney legal department with substantial responsibility for both legal and business affairs. Plaintiff was the sole point-person in HFA for reciprocal use agreements outside of the United States. She also worked on collecting and distributing royalties and negotiating licensing deals. In or about June 2002, plaintiff was appointed Director of HFA's Anti-Piracy Program, so that, in addition to her other duties, she monitored and intervened in the unauthorized use, both online and off-line, of HFA's clients' musical compositions. Plaintiff received positive feedback about her performance, including written accolades from Wayne Martin ("Martin"), Senior Director of

Client Relations; Gary Churgin ("Churgin"), CEO; Michele Olton ("Olton"), Senior Vice President of Human Resources; and other senior executives.

12. In or about October 2001, Jacqueline Charlesworth ("Charlesworth") was appointed as General Counsel.

13. In or about April 2002, Charlesworth hired a junior male lawyer as another member of the HFA legal team. Plaintiff and the male lawyer both graduated from Brooklyn Law School, where the male lawyer was one year ahead of plaintiff. Since law school, the male lawyer had worked at a very small law firm and had acquired very little experience even tangentially relevant to the auditing, copyright, and licensing work that HFA does. The male lawyer met Charlesworth at a conference regarding ring tones for cellular phones. To record and reproduce ring tones in accordance with U.S. copyright law, a license must be obtained, and any applicable royalties must be paid. HFA issues such licenses and collects such royalties on behalf of its clients, the music publishers. This is a very small part of HFA's overall work.

14. Despite his lack of relevant experience, the male lawyer was initially given the title of Senior Associate. Plaintiff complained to Charlesworth and Human Resources that she and the male lawyer should be treated the same. The male lawyer's title became Associate Counsel, but he was given a large office with windows, while plaintiff was left in a closet-like, windowless space with minimal air circulation. Moreover, Charlesworth herself placed the order for the male lawyer to receive state-of-the-art computer equipment – a laptop like hers – while plaintiff was still working on an old computer that had previously been used by another employee. Plaintiff was informed that she could not switch from her old computer to a laptop like Charlesworth's and the male lawyer's because a laptop was too expensive.

15. Upon information and belief, HFA paid the male lawyer a base annual salary of $120,000. Plaintiff's salary was only $80,000.

16. While the male lawyer's job responsibilities were to have been similar to plaintiff's, in practice he did far less than she did. For example, there were many complaints that the male lawyer slept at his desk during work hours. Plaintiff had to perform some of the male lawyer's job responsibilities, because he failed to do them. Clients and HFA staff members (both junior and senior) who were assigned to work with the male lawyer bypassed him and went directly to plaintiff when they needed assistance because they were dissatisfied with the level of service the male lawyer provided.

17. In or about September 2003, plaintiff informed Charlesworth that she was pregnant with her first child. Plaintiff told Charlesworth that she was committed to her career, and that she planned to remain involved with the business while on maternity leave. Plaintiff told Charlesworth that she intended to return to work after fourteen weeks of maternity and vacation leave.

18. Following plaintiff's conversation with Charlesworth about her pregnancy, Charlesworth's demeanor toward plaintiff changed, and Charlesworth went out of her way to demonstrate animus whenever any matter concerning her pregnancy arose.

19. HFA had a policy permitting flexible work schedules. On or about February 2, 2004, plaintiff presented Charlesworth with a written proposal and asked whether they could arrange for plaintiff to work a flexible schedule upon her return from maternity leave. Charlesworth replied that she did not have the authority to grant plaintiff a flexible schedule, that plaintiff would need to speak to the Human Resources Department, and that Churgin disapproved of such arrangements. In contrast, the Human Resources Department informed

plaintiff that flexible schedules were a matter within the manager's discretion, who, in plaintiff's case, was Charlesworth. An inter-office memorandum that was later disseminated announced, "All employees are eligible to propose a flexible work arrangement and managers will evaluate each request on its merits."

20. Also in or about February 2004, Charlesworth and plaintiff discussed whether plaintiff would be promoted to Senior Counsel. Charlesworth told plaintiff that there was no money in the budget for her to receive that promotion.

21. Plaintiff began her maternity leave on or about February 16, 2004. Throughout her maternity leave plaintiff took calls at home from clients and HFA staff members, called into her voice-mail, and returned those calls on a regular basis.

22. In or about early March 2004, when plaintiff was home waiting for her baby to be born, Charlesworth called her and demanded that plaintiff tell her what plaintiff planned to do after her maternity leave. Plaintiff repeated what she had already told Charlesworth orally and in writing -- that she would come back to the same position as before; her preference would be to do so on a flexible schedule, but that her return was not conditional on that request. Charlesworth told plaintiff that her options were full-time employment or no employment. Plaintiff believed that Charlesworth's refusal to even consider a flexible schedule was one more way in which Charlesworth tried to force plaintiff to leave HFA.

23. While plaintiff was on maternity leave, the Senior Counsel promotion that Charlesworth had recently told plaintiff was not available to her because of budgetary concerns was granted to the male lawyer, effective on or about April 1, 2004. The male lawyer had less tenure with HFA than plaintiff and less relevant experience than plaintiff. Plaintiff learned about

the male lawyer's promotion through friends. Charlesworth did not tell plaintiff about it, nor did plaintiff receive any official word from HFA at all.

24. On or about May 10, 2004, plaintiff complained through counsel that she was paid less than a man doing substantially similar work and that she was the victim of discrimination on the basis of her pregnancy. Instead of redressing the problems plaintiff had called to HFA's attention, HFA's treatment of plaintiff was worse when she returned from maternity leave on or about May 24, 2004. In particular:

(a) Plaintiff came back from maternity leave to what was, in effect, a demotion to a clerical position. First, Charlesworth foisted upon plaintiff a series of administrative tasks more commensurate with a secretarial position than plaintiff's; for example, she asked plaintiff to compile every Board of Directors report submitted during her tenure in a binder. Plaintiff opposed her assignment of clerical tasks as inappropriate to her level, but Charlesworth and the male lawyer insisted that plaintiff compile the Board reports and other lists anyway. Second, Charlesworth took away some of plaintiff's core tasks. When plaintiff left, she had been the Director of the Anti-Piracy Project; upon her return, HFA either refused clients' requests for anti-piracy work or sent such work to outside counsel, at considerable additional cost;

(b) Charlesworth repeatedly questioned whether plaintiff would be able to work the hours required and whether plaintiff was committed to the company; and

(c) On or about May 26, 2004, Charlesworth made known her belief that mothers should stay home with their babies for at least the baby's first nine months because "no home caregiver could possibly stimulate a baby like a stay-at-home mom." Charlesworth continued by stating that she had stayed home with her daughter for the first nine months, and

that she approved of the male lawyer's wife's presence in the home with their child. She even attributed the male lawyer's infant's development to the male lawyer's wife's choice not to work outside the home. Charlesworth said all of these things in plaintiff's presence, with full knowledge that plaintiff was at work and her twelve-week-old daughter was at home.

25. Because of the sexually discriminatory distribution of salary and promotions, as well as the work environment hostile to working mothers, plaintiff was compelled to resign from her employment at HFA effective on or about June 14, 2004. Plaintiff informed HFA of her reasons for leaving. As Charlesworth demonstrated through comments about a mother's proper place being in the home, Charlesworth disapproved of plaintiff's return to work. These comments, coupled with a humiliating demotion to ministerial tasks while plaintiff's less qualified (non-pregnant) male counterpart had been promoted in her stead, created an environment where plaintiff felt compelled to resign.

26. After plaintiff resigned, HFA packed up the personal belongings in her office without giving her a chance to do so herself, and programmed her voice-mail with a message that misled callers to believe she was still employed by HFA, but was irresponsible in not responding to the messages.

27. On information and belief, HFA interfered with plaintiff's relationships with HFA clients to hurt her professional reputation and further retaliate against her for her complaints of discrimination.

FIRST CAUSE OF ACTION

Discrimination Under Title VII

28. Plaintiff repeats and realleges paragraphs 1 to 27 of the Complaint as if fully set forth herein.

29. By the acts and practices described above, including but not limited to paying a less-qualified male employee a significantly higher salary, promoting that less-qualified male employee, and constructively discharging plaintiff, defendant has discriminated against plaintiff because of her gender and pregnancy, in violation of Title VII.

30. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.

31. As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages.

SECOND CAUSE OF ACTION

Retaliation Under Title VII

32. Plaintiff repeats and realleges paragraphs 1 to 31 of the Complaint as if fully set forth herein.

33. By the acts and practices described above, defendant has retaliated against plaintiff for her opposition to unlawful employment actions, in violation of Title VII.

34. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.

35. As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages.

THIRD CAUSE OF ACTION

Discrimination Under the EPA

36. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 35 of the Complaint as if fully set forth herein.

37. By the acts and practices described above, defendant, in violation of the EPA, has discriminated against plaintiff by paying a male employee higher wages than plaintiff was paid for equal work in a job which required equal skill, effort, and responsibility, and which was performed under similar working conditions.

38. Defendant knew that its actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for plaintiff's statutorily protected rights.

39. Plaintiff suffered lost wages as a result of defendant's willful and unlawful conduct.

FOURTH CAUSE OF ACTION

Discrimination Under the Labor Law

40. Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint with the same force and effect as if fully set forth herein.

41. By the acts and practices described above, defendant has discriminated against plaintiff by paying a male employee higher wages than plaintiff was paid for equal work in a job, the performance of which required equal skill, effort, and responsibility, and which was performed under similar working conditions, in violation of the New York State Labor Law.

42. Defendant knew that its actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for plaintiff's statutorily protected rights.

43. Plaintiff suffered lost wages as a result of defendant's willful and unlawful conduct.

FIFTH CAUSE OF ACTION

Discrimination Under the Executive Law

44. Plaintiff repeats and realleges paragraphs 1 to 43 of the Complaint as if fully set forth herein.

45. By the acts and practices described above, defendant has discriminated against plaintiff in the terms and conditions of her employment based on her gender and pregnancy in violation of the Executive Law.

46. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's statutorily protected rights.

47. As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages.

SIXTH CAUSE OF ACTION

Retaliation Under the Executive Law

48. Plaintiff repeats and realleges paragraphs 1 to 47 of the Complaint as if fully set forth herein.

49. By the acts and practices described above, defendant has retaliated against plaintiff for her opposition to unlawful employment actions in violation of the Executive Law.

50. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's statutorily protected rights.

51. As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages.

SEVENTH CAUSE OF ACTION

Discrimination Under the City Law

52. Plaintiff repeats and realleges paragraphs 1 to 51 of the Complaint as if fully set forth herein.

53. By the acts and practices described above, defendant has discriminated against plaintiff in the terms and conditions of her employment based on her gender and pregnancy in violation of the City Law.

54. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's statutorily protected rights.

55. As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages.

EIGHTH CAUSE OF ACTION

Retaliation Under the City Law

56. Plaintiff repeats and realleges paragraphs 1 to 55 of the Complaint as if fully set forth herein.

57. By the acts and practices described above, defendant has retaliated against plaintiff for her opposition to unlawful employment actions in violation of the City Law.

58. Defendant acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

59. As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages.

PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

(a) declaring the acts and practices complained of herein to be violations of Title VII, the EPA, the Labor Law, the Executive Law and the City Law;

(b) enjoining and permanently restraining these violations of Title VII, the EPA, the Labor Law, the Executive Law and the City Law;

(c) directing defendant to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) directing defendant to place plaintiff in the position she would have occupied but for defendant's discriminatory and unlawful conduct and making her whole for all earnings and other benefits she would have received but for defendant's discriminatory treatment, including but not limited to, wages, pension, and other lost benefits;

(e) directing defendant to pay plaintiff liquidated and compensatory damages, including damages for emotional distress, humiliation, and pain and suffering and interest thereon;

(f) directing defendant to pay an additional amount as punitive damages for its willful and/or reckless disregard of plaintiff's statutory rights;

(g) awarding plaintiff such interest as is allowed by law;

(h) awarding plaintiff her reasonable attorneys' fees and costs; and

(i) granting such other and further relief as this Court deems necessary and proper.

DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
May 12, 2005

VLADECK, WALDMAN, ELIAS & ENGELHARD, P.C.

By: [signature]

Anne C. Vladeck (AV 4857)
Michele Host (MH 2557)
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, New York 10036
(212) 403-7300